DowNey, Judge,
delivered the opinion of the court:
Plaintiffs seek to recover $3,560, on account of a deduction of that amount as liquidated damages for delay in the performance of a contract entered into on the 8th day of March, 1919, between them and the United States, represented by the Chief of the Bureau of Yards and Docks, for the construction of a grand stand and bleachers at the naval operating base, Hampton Hoads, Virginia.
The contract contained a provision as follows:
“ 16. Conditions as to seeming labor. — No labor shall be withdrawn from any other yards and docks, contractors, subcontractors, or operations of a military necessity. No rates of wages shall be paid in excess of the established rates prevailing at the place where this contract is to be performed.”
In December preceding the execution of this contract a Government board, known as the board of control of war construction activities in the Hampton Roads district, had prepared and published a schedule of wages to be paid by *355 the Government and by contractors on Government work, and the scale in force at the time of the execution of this contract fixed the wage of bricklayers at 87-¿ cents' per hour. At that time the union scale in the Norfolk district was also 87-| cents per hour, but thereafter, effective on the 1st of April, the union scale was increased to $1 per hour.
By reason of this condition the plaintiffs had difficulty in procuring a sufficient number of bricklayers to carry on the work expeditiously. They negotiated for some time with union officials with the view of securing their consent, to the employment of union bricklayers on this work at 87-J-cents per hour, but in this they were unsuccessful. Without going into the details, which are set out more fully in the findings, it is sufficient to say that they finally secured bricklayers in varying numbers to work for various portions of the time carried on their pay rolls, and the work was fiirally completed.
The contention of the plaintiffs, and that upon which the case for the most part at least must be predicated, is that under the paragraph above quoted they were authorized to pay the union scale of wages, but that they were prevented from so doing by the Government’s representative in charge of the work.
We think this contention is wholly whithout merit. Whatever the reason may have been for the insertion of that clause in the contract, and whether the reason may have been good or bad, with which we are not concerned, it is quite apparent from the whole record not only that that provision referred to the established rate of wages as fixed by the board of control referred to, but that it was so understood by the plaintiffs themselves. And in this connection it is proper to observe that during all of the negotiations on the part of the plaintiffs with the union officials and correspondence and conferences upon their part with the representatives of the Government, they recognized the fact that under the contract they were permitted to pay but 87-J cents per hour for bricklayers, and the record does not disclose that they ever during the progress of the work made any other contention with reference to the matter. The conten *356 tion tbat they were entitled under the contract to pay $1 per hour made its appearance in the case after the completion of the work.
If the situation which confronted the contractors when they began to prepare for the performance of this work was a hard one, it was not because they had in any manner been misled or deceived with reference to the provisions of the contract or had entered into it without a full understanding of its meaning. Some light is thrown upon the situation by the fact that at the time the contract was made the rate fixed by the Government board and the union rate in the Norfolk district were the same. It appears from the record, although we have not found it necessary to incorporate it in the findings, that when the union contemplated an increase in the wage scale they gave the contractors in the vicinity six months’ notice of the fact that an increased rate would be effective on a given date, and it also appears that the plaintiffs were complaining to the secretary of the international union that they had not been notified by the Norfolk union of this advance in the rate of pay. Reading between the lines, there is room for the assumption that there was friction of some sort between these contractors and the Norfolk union. But while these matters may be of interest as side lights they are not at all material to the determination of the question at issue. We have no doubt of the correctness of the conclusion that under the contract the plaintiffs were prohibited from paying more than the Government rate of 87£ cents per hour, and that they, at the time of the execution of the contract and at all times thereafter during its performance, so understood it.
It is to be observed, then, in' this connection that no reason is asserted why the plaintiffs are entitled to be relieved in any manner from the operation of this provision in the contract. If it was a hard situation, it was one into which they deliberately entered and without any pretense that they were in. any manner misled or deceived.
It is further contended for the plaintiffs that they sought permission from the Government officer in charge of the work to pay the increased scale and that such permission was *357 refused. The record does not disclose that there was ever any specific request of this nature and therefore there was never any specific refusal, but, assuming the facts to be as stated, they are asserted as a ground for extension of time equal to the delay in the completion of the work, and therefore a relief from the assessment of liquidated damages upon the theory that' the delay was caused by the United States. The theory is ingenious, for, as we understand it, the attempt is thus to bring this situation within the provisions of the contract with reference to unavoidable delays, included in which are “delays caused by acts of the Government.”
It seems to us scarcely pertinent to say much more about this contention than is implied in the use of the word “ ingenious.” It is certainly novel to asume the theory that a requirement that contractors should comply with conditions written into their contract would constitute a delay on the part of the Government, relieving them from the provisions of another clause of the same contract. Further, the complaint in this respect is with reference to the action of the officer in charge of the work. He was there, we may well assume, for the purpose chiefly of seeing that the contractors did comply with the provisions of their contract, and it nowhere appears that he had any power to alter it if he had been so disposed.
A minor question arises as to the number of days of delay due to the difference in the theory of the parties as to the date upon which the contract must under its provisions be completed. The contract required that it should be performed within 110 days from the date upon which the executed copy thereof was delivered to the contractors, and there is no question made as to this date. But there was another provision in the contract which inquired that the contractors should return to the Bureau of Yards and Docks the contracts executed by them within ten days after the receipt by them of the prepared contracts for execution. It is conceded that the contractors received the contracts for execution by them on the 10th day of March, and that they were returned so that they reached the Bureau of Yards and Docks on the 24th of March, an elapsed time of fourteen *358 days. The contracts when returned to the Bureau of Yards and Docks were accompanied by a letter, which was dated March 20, just ten days after the receipt by them of the contracts for execution, but it is not proven or attempted to be proven that the contracts were deposited in the mails for return on the 20th day of March, nor is there any explanation as to where they may have been during this four days’ interval. The contractors’ office was at Newport News, and the Bureau of Yards and Docks was in Washington. We may well know that mail deposited in the post office at Newport News on the 20th day of March would in ordinary course be in Washington on the following day, or conversely that mail which did not arrive in Washington until the 24th of March was in ordinary course mail which had been deposited in the post office at Newport News on the 23d. If these contractors had deposited these contracts in the post office at Newport News, properly addressed and stamped, on the 20th day of March, the date of the letter which accompanied them, it would follow that such act on their part would be construed as a return of the contracts within the ten-day limit, but upon that question the burden is clearly upon the plaintiffs, and they have made no effort to discharge it. It is only reasonable, therefore, to allow them one day’s time as time in transit and charge them with a default of three days under that provision of the contract which required a decrease in the time of the performance of the contract of one day for every day of delay in this respect. Upon this basis the number of days of delay in the performance of the contract were determined, and they were charged accordingly, being given credit in that respect for the number of days which it had been determined they were entitled to on account of unavoidable delays.
There are other features of the case woven into its discussion to which we do not find it necessary to refer. The contract was to be construed as we have indicated, and we have had frequent holdings of the higher court to the effect that the working of a hardship is never sufficient to relieve the contractor from an obligation assumed by him when he deliberately and with full knowledge enters into his contract. It must be enforced as written, and so enforced there re *359 mains no basis of recovery by the plaintiffs. We have directed judgment accordingly.
Gbaham, Judge; Hat, Judge; Booth, Judge; and Campbell, Ohief Justice, concur.